UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

YAMARIS G.,

                  Plaintiff,

       v.

COMMISSIONER OF SOCIAL
SECURITY,

                 Defendant.

_____

**DECISION AND ORDER**

1:22-CV-00068 CDH

## INTRODUCTION

Plaintiff Yamaris G. ("Plaintiff") seeks review of the final decision of the Commissioner of Social Security ("the Commissioner" or "Defendant") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), pursuant to Titles II and XVI of the Social Security Act (the "Act"). (Dkt. 1). Under Rules 5 through 8 of the Supplemental Rules for Social Security Actions Under 42 U.S.C. § 405(g) and Local Rule of Civil Procedure 5.5(d), the matter has been presented for decision by the parties' filing of motions for judgment on the pleadings. (*See* Dkt. 8; Dkt. 9; Dkt. 10). For the reasons that follow, the Court denies Plaintiff's motion and grants the Commissioner's motion.

## BACKGROUND

On July 8, 2015, Plaintiff protectively filed applications for DIB and SSI, alleging disability beginning January 1, 1994. (Dkt. 6 at 24, 95-96).[1] Her applications

---

[1]     In referencing the administrative transcript, the Court has referred to the page numbers generated by CM/ECF and found in the upper right corner of the documents.

were initially denied on November 30, 2015. (*Id*. at 24, 98-105). Plaintiff requested a hearing before an administrative law judge ("ALJ") (*id*. at 106-08), which was held on February 15, 2018 (*id*. at 46-80). At this hearing, Plaintiff amended her alleged disability onset date to July 8, 2015. (*Id*. at 52).

On April 4, 2018, the ALJ issued an unfavorable decision. (*Id*. at 18-45). Plaintiff sought review from the Appeals Council, which denied her request on August 20, 2019. (*Id*. at 7-14). Plaintiff commenced an action in this District and on December 14, 2020, the Hon. J. Gregory Wehrman entered a Decision and Order remanding the matter to the Commissioner for further administrative proceedings. (*Id*. at 797-807).

On remand, the Appeals Council ordered a new hearing, which was held on September 16, 2021. (*Id*. at 691-714, 809-15). The ALJ issued an unfavorable decision on September 24, 2021. (*Id*. at 656-90). This action followed.

## LEGAL STANDARD

### I.     Administrative Determination of Disability

The Social Security Administration's ("SSA") regulations establish a five-step, sequential evaluation that an ALJ follows in determining whether a claimant is disabled within the meaning of the Act. *See Sczepanski v. Saul*, 946 F.3d 152, 156 (2d Cir. 2020); 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ determines whether the claimant is currently engaged in substantial gainful work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not, the ALJ continues to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act. *Id*. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is "severe" within the meaning

of the Act if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id*. §§ 404.1520(c), 416.920(c).

If the claimant has at least one severe impairment, the ALJ proceeds to step three. There, the ALJ determines whether the claimant's impairment or impairments meet or medically equal the criteria of the impairments listed in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant does not have an impairment that both meets or medically equals a Listing and satisfies the Act's durational requirement, *see id*. §§ 404.1509, 416.909, the ALJ must determine the claimant's residual functional capacity ("RFC"), *id*. §§ 404.1520(e), 416.920(e). "The Social Security regulations define residual functional capacity as the most the claimant can still do in a work setting despite the limitations imposed by his impairments." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013); *see* 20 C.F.R. §§ 404.1545, 416.945.

At step four, the ALJ determines whether, in light of the RFC assessment, the claimant is capable of performing any past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is unable to perform any past relevant work, the ALJ proceeds to the fifth and last step. At this step, the burden shifts to the Commissioner to demonstrate that, taking into account the claimant's age, education, work experience, and RFC, the claimant is capable of performing substantial gainful work that exists in the national economy. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## II.    Review by the Court

The Court has jurisdiction under 42 U.S.C. § 405(g) to review the Commissioner's final decision denying an application for disability benefits. It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted). Instead, in performing its review, the Court is "limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Selian*, 708 F.3d at 417 (citation omitted). If the Commissioner's findings of fact are supported by substantial evidence, they are "conclusive." 42 U.S.C. § 405(g). In other words, "[i]f there is substantial evidence to support the determination, it must be upheld." *Selian*, 708 F.3d at 417.

"Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).

## DISCUSSION

## I.    The ALJ's Decision

The ALJ applied the five-step, sequential evaluation described above in determining whether Plaintiff was disabled. Before proceeding to step one, the ALJ explained that because Plaintiff last met the insured status requirements of the Act on June 30, 2004, she "would not be entitled to a period of disability and disability

insurance benefits under Title II of the Social Security Act because she would not have disability insured status on the date of onset." (Dkt. 6 at 662-63). The ALJ further explained that Plaintiff, through counsel, had "voluntarily elected to withdraw her request for hearing as it pertains to the application for a period of disability and disability insurance benefits" and that this portion of her request for a hearing was dismissed. (*Id*.). The remainder of the ALJ's decision addressed only the application for SSI. (*Id*.).

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since July 8, 2015, the amended alleged onset date. (*Id*. at 665). The ALJ found at step two that Plaintiff had the severe impairments of asthma, bilateral carpal tunnel syndrome, bilateral cubital tunnel syndrome, bilateral medial epicondylitis, migraine headaches, neck pain due to cervical spasms, and obesity. (*Id*.). The ALJ also concluded that Plaintiff had the following non-severe impairments: obstructive sleep apnea, hypothyroidism, chronic anemia, major depressive disorder, bipolar disorder, post-traumatic stress disorder ("PTSD"), and generalized anxiety disorder. (*Id*. at 665-67).

The ALJ found at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the Listings. (*Id*. at 667). At step three, the ALJ specifically discussed the criteria of Listings 3.02, 3.03, and 11.02. (*Id*. at 667).

The ALJ assessed Plaintiff's RFC and determined that Plaintiff retained the ability to perform light work as defined in 20 C.F.R. § 416.967(b) with the additional limitations that Plaintiff:

> can lift and carry ten pounds continuously and up to twenty pounds
> occasionally; can sit 15 minutes continuously and for up to 4 hours total;
> can stand 15minutes continuously and for up to 4 hours total; can walk
> 15 minutes continuously and for up to 1 hour total; can occasionally push
> and pull; can occasionally operate foot controls; can occasionally climb
> ramps; can occasionally stoop, kneel, crouch, crawl, and climb ladders,
> ropes and scaffolds; can occasionally drive; must avoid concentrated
> exposure to fumes, odors, dusts, gases, poor ventilation, and other
> respiratory irritants; and cannot be exposed to extreme heat, cold,
> wetness or humidity.

(*Id.* at 667-68). The ALJ then proceeded to step four and found that Plaintiff had no

past relevant work.  (*Id.* at 682).

The ALJ found at step five that—considering Plaintiff's age, education, work

experience, and RFC—there were jobs that exist in significant numbers in the

national economy that Plaintiff could perform. (*Id.* at 682-83). The ALJ ultimately

concluded that Plaintiff was not disabled, as defined in the Act, from July 8, 2015,

through the date of the ALJ's decision. (*Id.* at 683).

## II.   **The Commissioner's Final Determination is Supported by Substantial Evidence and does not Contain a Reversible Legal Error**

Plaintiff argues that the ALJ erred at step two in concluding that her mental

impairments were non-severe. (Dkt. 8-1 at 1). Plaintiff further argues that the ALJ

erred in failing to include any limitations from mental impairments in the RFC

finding. (*Id.*). The Court is unpersuaded by these arguments, for the reasons set forth

below.

### A.   **Step Two Severity Analysis**

The step two severity determination "is intended to increase the efficiency and

reliability of the disability evaluation process by identifying at an early stage those

claimants whose medical impairments are so slight that it is unlikely they would be

found to be disabled." *Howard v. Comm'r of Soc. Sec.*, 203 F. Supp. 3d 282, 295 (W.D.N.Y. 2016) (alterations and quotation omitted). As noted above, a severe impairment is one that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c).

"The claimant bears the burden of presenting evidence establishing severity." *Taylor v. Astrue*, 32 F.Supp.3d 253, 265 (N.D.N.Y. 2012). While only "*de minimis* claims" should be screened out at step two, *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995), "the mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition severe," *Taylor,* 32 F. Supp. 3d at 265 (quotations omitted). An impairment is non-severe "if the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on an individual's ability to work." *Howard*, 203 F. Supp. 3d at 282.

When evaluating the severity of mental impairments, an ALJ must apply a "special technique" set forth in the Commissioner's regulations. 20 C.F.R. § 404.1520a(a). "The criteria for this evaluation—usually referred to as the 'paragraph A" and "paragraph B" criteria—are provided in section 12.00 of the Listings." *Kathryn A. v. Commr of Soc. Sec.*, No. 3:22-CV-1392 (SDV), 2023 WL 8596012, at *7 (D. Conn. Dec. 12, 2023). The ALJ first "evaluates whether the claimant has a medically determinable mental impairment using the paragraph A criteria." *Id*. If the claimant has such a mental impairment, "the ALJ assesses the claimant's degree of functional limitation in the 'four broad functional areas' described in paragraph B: (1) understand, remember, or apply information; (2)

interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself." *Id.* With respect to each of these areas, the ALJ then "must rate the degree of limitation in each functional area on a five-point scale: None, mild, moderate, marked, and extreme." *Id.* If there is a rating of "none" or "mild" in each of the functional areas, the mental impairment(s) will generally be found to be non-severe. *Id.*

The ALJ applied the special technique in assessing Plaintiff's mental impairments in this case. The ALJ first concluded that Plaintiff had the medically determinable mental impairments of major depressive disorder, bipolar disorder, PTSD, and generalized anxiety disorder. (Dkt. 6 at 665). The ALJ then applied the paragraph B criteria and concluded that Plaintiff had a mild limitation in understanding, remembering, or applying information, no limitation in interacting with others, a mild limitation in concentrating, persisting, or maintaining pace, and no limitation in adapting or managing oneself. (*Id.* at 666).

Plaintiff argues that the ALJ's step two conclusions were not supported by substantial evidence. (Dkt. 8-1 at 19-26). The Court disagrees. The ALJ carefully explained the evidentiary basis for his conclusions. That evidence included: the opinion of consultative psychiatric examiner Dr. Susan Santarpia, who examined Plaintiff in October 2015 and opined that she had a "mild impairment in performing complex tasks independently" due to "lack of motivation" and that her psychiatric problems were not "significant enough to interfere with [Plaintiff's] ability to function on a daily basis"; the opinion of state agency consultant Dr. H. Ferrin, who reviewed Plaintiff's medical records in November 2015 and opined that Plaintiff did not have a

severe mental health impairment; and the opinion of consultative examiner Dr. Christine Ransom, who examined Plaintiff in June 2021 and concluded that Plaintiff's psychiatric conditions were "stabilized on treatment" and that she would have no limitation in work-related mental functioning. (Dkt. 6 at 666; *see id.* at 81-86; 299-302; 1018-21). Of note, no medical source opined that Plaintiff had a severe mental health impairment. The ALJ also considered Plaintiff's self-reported activities of daily-living. (*Id.* at 666-67).

Plaintiff's arguments that the ALJ erred at step two are unpersuasive, consistently primarily of Plaintiff's assertions that the ALJ should have weighed the evidence differently or placed greater emphasis on particular portions of the medical records. But it is well-established that "[i]f the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). Here, Plaintiff has failed to demonstrate that the ALJ's interpretation of the evidence was irrational or unreasonable.

For example, Plaintiff argues that the ALJ erred in finding that she had no limitation in interacting with others, pointing to medical records reflecting self-reports of suicidal and homicidal ideation, irritability, mood swings, hallucinations, and panic attacks. (Dkt. 8-1 at 23-24). The ALJ considered all of this evidence, but ultimately gave more weight to the medical opinions of record, which concluded that Plaintiff had no limitation in maintaining social functioning, was able to relate adequately with others, and had no limitation in interacting adequately with supervisors, co-workers, and the public. (Dkt. 6 at 85, 301-02, 1020). The ALJ further gave weight to Plaintiff's report that she had "no problems getting along with family,

friends, neighbors or others[.]" (Dkt. 6 at 666; *see id.* at 226). The ALJ was within his discretion to weigh the evidence in this manner. *See Micheli v. Astrue*, 501 F. App'x 26, 29-30 (2d Cir. 2012) ("It is the sole responsibility of the ALJ to weigh all medical evidence and resolve any material conflicts in the record[.]")

Similarly, Plaintiff argues that the ALJ should have found more than a mild limitation in concentrating, persisting, or maintaining pace, pointing to medical records showing "diminished" or "fair" attention and/or concentration. (Dkt. 8-1 at 24-25). As an initial matter, the Court is not persuaded that a finding of "fair" attention and/or concentration necessarily correlates to more than a mild limitation in concentrating, persisting, or maintaining pace, and Plaintiff has cited no authority for this proposition. Further, the ALJ cited ample evidence to support his conclusion, including particularly Dr. Santarpia's and Dr. Ransom's opinions. (Dkt. 6 at 666). In June 2021—only three months before the ALJ issued his decision—Dr. Ransom found on examination that Plaintiff's attention and concentration were intact and opined that Plaintiff would have no limitation in sustaining concentration and performing a task at a consistent pace. (Dkt. 6 at 1020). The ALJ's finding of a mild limitation in this area thus was more restrictive than the medical opinion evidence, because the ALJ took into account Plaintiff's report that she experienced difficulties in paying attention.

Plaintiff's arguments regarding the ALJ's finding that she would have no limitation in adapting and managing oneself fare no better. Again, Plaintiff points to evidence that she claims supports a more restrictive conclusion, including the fact that she was hospitalized in January 2020 after reporting suicidal ideation. (Dkt. 8-

1 at 25-26). But Dr. Ransom was aware of this hospitalization (*see* Dkt. 6 at 1018) and nevertheless concluded that Plaintiff would have no limitation in regulating emotions, controlling behavior, maintaining well-being, maintaining personal hygiene and appropriate attire, and awareness of normal hazards and taking appropriate precautions (*id*. at 1020). Moreover, as Defendant correctly points out (*see* Dkt. 9-1 at 14), the record shows that Plaintiff's hospitalization followed weeks of non-adherence to her prescribed medication (*see* Dkt. 6 at 678, 1271). As the ALJ noted (*id*. at 678), the record further reflects that after being back on her medications for just a "couple of days," Plaintiff denied suicidal or homicidal ideation and was pleasant, future oriented, and discharge focused (*id*. at 1271). An impairment that is "controlled by medication and treatment" may properly be determined to be non-severe. *Pulos v. Comm'r of Soc. Sec.*, 346 F. Supp. 3d 352, 359 (W.D.N.Y. 2018); *see also Acevedo v. Saul*, 577 F. Supp. 3d 237, 247 (S.D.N.Y. 2021).

In sum, Plaintiff's challenge to the ALJ's step two severity analysis relies on her own interpretation of the medical evidence, which is counter to every medical opinion of record regarding her mental impairments. Under these circumstances, the Court finds no basis to disturb the Commissioner's determination.

Further, and as discussed more fully below, the ALJ considered the impacts of Plaintiff's mental impairments in detail when formulating his RFC assessment. It is well-established that "[s]o long as a non-severe impairment is considered in assessing a claimant's RFC at steps three and four, any improper labeling of an impairment or combination of impairments as non-severe is not reversible error." *Acevedo*, 577 F.

Supp. 3d at 247. Accordingly, even had the ALJ erred at step two, reversal and remand would not be warranted.

## B.    <u>RFC Determination</u>

Plaintiff argues that the ALJ erred in failing to include any limitations related to Plaintiff's mental impairments in the RFC finding. (Dkt. 8-1 at 27-29). "In assessing a plaintiff's RFC, the ALJ 'must account for limitations imposed by both severe and nonsevere impairments.'" *Stephen F. v. Comm'r of Soc. Sec.*, No. 1:24-CV-00017-MAV, 2024 WL 4661589, at *4 (W.D.N.Y. Nov. 1, 2024) (quoting *Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012)).

In making his RFC determination, the ALJ discussed at length the evidence regarding Plaintiff's mental health impairments. (Dkt. 6 at 668-81). The ALJ then explicitly considered whether Plaintiff's mental health impairments would cause her to have "limitations in work-related mental functioning," and found that they would not. (*Id.* at 681). The ALJ explained that while there were "potentially contrary facts," the "consistency in the opinion evidence by examining and reviewing sources throughout the period at issue, in the absence of contrary treating source opinions," lead him to this conclusion. (*Id.*). As the Court has already detailed above, all the medical opinions of record regarding Plaintiff's mental impairments support the ALJ's conclusion.

Plaintiff appears to argue that having found mild limitations in two of the functional areas at step two, the ALJ was required to incorporate some form of limitation in work-related mental functioning into the RFC. (Dkt. 8-1 at 28). But that is not the law. "[W]hen substantial evidence in the record supports only mild

- 12 -

limitations in mental functioning, an ALJ is not required to include mental limitations or restrictions in the RFC." *Julia M. v. Comm'r of Soc. Sec.*, No. 21-CV-00972, 2023 WL 7002557, at *3 (W.D.N.Y. Oct. 24, 2023) (collecting cases). Here, the ALJ's determination was supported by substantial evidence—namely, the medical opinions of Drs. Ferrin, Santarpia, and Ransom, which were uncontradicted by any other medical opinion. "It is not enough for plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position." *Id.*

Plaintiff's reliance on *David Q. v. Comm'r of Soc. Sec.*, No. 20-CV-1207MWP, 2022 WL 806628 (W.D.N.Y. Mar. 17, 2022), is misplaced. In that case, the ALJ "found that plaintiff's depression was a medically determinable impairment, albeit nonsevere, which nonetheless caused 'mild' limitations in each of the four broad categories of functioning," yet "completely failed to analyze the extent to which these mild limitations affected the RFC determination." *Id.* at *6. By contrast, the ALJ in this case did perform such an analysis and thoroughly explained the basis for his conclusion that Plaintiff did not have any limitations in work-related mental functioning. The error found by the court in *David Q.* does not exist in this case.

Ultimately, it was Plaintiff's burden to prove a more restrictive RFC than found by the ALJ. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018). The ALJ reasonably concluded that she had not done so. There is accordingly no basis for the Court to reverse or otherwise disturb the Commissioner's determination in this matter.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 9) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 8) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
COLLEEN D. HOLLAND
United States Magistrate Judge

Dated:         September 23, 2025
               Rochester, New York